UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

VIDEO-HOME-ONE, Inc. d/b/a/    )
V-H-ONE VIDEO,    )
        )
      Plaintiff,    )
        )
   v.    )   CASE NO. 1:05-cv-1712-DFH-VSS
        )
CARL BRIZZI, in his official capacity    )
as Marion County Prosecutor,    )
        )
      Defendant.    )

MEMORANDUM OPINION

Indiana Code § 35-49-3-3(a)(3) makes it a felony for any person to sell or to display for sale sexually explicit materials within 500 feet of a church or school. After an evidentiary hearing on November 17, 2005, the court entered a temporary restraining order barring enforcement of Indiana Code § 35-49-3-3(a)(3) against plaintiff Video-Home-One, Inc. This memorandum opinion states the essence of the court's reasoning.

The statutory restriction on the location of sales of sexually explicit materials could survive First Amendment scrutiny only on the theory that the restriction is likely to reduce the so-called secondary effects of legal sexually-oriented businesses. See, *e.g.*, *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 433-34 (2002) (plurality opinion), citing *City of Renton v. Playtime*

*Theatres, Inc.*, 475 U.S. 41 (1986).  Plaintiff rents and sells a wide variety of videos.  Less than 10 percent of its floor space is devoted to a separate area for adults only in which sexually explicit videos are available for rental or purchase. The court has before it no evidence that a business like plaintiff's generates the types of secondary effects that can justify location restrictions as in the *Alameda Books* line of cases.  The court therefore found that plaintiff is likely to succeed on the merits of its challenge to the statute and was otherwise entitled to a temporary restraining order.

I.      *The Facts*

Plaintiff operates its video store at the corner of 21st Street and Franklin Road on the east side of Indianapolis.  It has operated there for approximately fifteen years, apparently in the same manner during that time.  Across the street from plaintiff's video store is a church that has been located at its site for more than 100 years.  In September 2005, investigators for the Office of the Prosecuting Attorney for Marion County determined that plaintiff was offering for sale or rental some sexually explicit material that would fall within the statutory definition of material "harmful to minors" that is subject to the 500-foot restriction.  There is no evidence that plaintiff sells or rents these sexually explicit materials to minors or even that minors can see its displays of these materials, which are kept in a separate section of the store accessible only to adults.  Also, it appears that all of the sexually explicit materials available to adults are not obscene and thus are constitutionally protected for adults to buy, sell, and view in the privacy of their

homes. Unlike many stores that specialize in the sale of sexually explicit materials to adults, plaintiff does not have facilities in its store for viewing such materials.

On October 7, 2005, the Office of the Prosecuting Attorney wrote a letter to plaintiff stating that it was violating Indiana Code § 35-49-3-3(a)(3) by selling and displaying sexually explicit material harmful to minors within 500 feet of a church property. The letter warned plaintiff to remove the offending material within 30 days or face the risk of prosecution. A violation of the statute is a Class D felony under Indiana law. Plaintiff removed the offending material on November 6, 2005, and then filed this suit on November 15, 2005, alleging that the statute is unconstitutional on its face and as applied to plaintiff. Plaintiff sought a temporary restraining order and a preliminary and permanent injunction. The Attorney General of Indiana has appeared to defend the constitutionality of the challenged state statute.

II.   *Standards for Injunctive Relief*

To obtain a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure, a party must show (1) a reasonable likelihood of prevailing on the merits, and (2) an imminent threat of irreparable harm without an adequate remedy at law if the request is denied. See, *e.g.*, *Grossbaum v. Indianapolis-Marion County Building Auth.*, 100 F.3d 1287, 1291 (7th Cir. 1996). If this threshold is met, the court must then balance the harm plaintiff would suffer if an injunction

is wrongly denied against the harm that an injunction would impose on the defendant if an injunction is wrongly issued. The court is also required to consider the effect its decision will have on the public interest, which ordinarily includes effects on any persons who are not parties before the court. *Id.*

A temporary restraining order under Rule 65 is an extraordinary equitable remedy. It may be used on an emergency basis to prevent irreparable harm and to preserve the status quo ante until the parties and the court have more time to consider a case, such as in a preliminary injunction hearing. See *First Technology Safety Systems, Inc. v. Depinet*, 11 F.3d 641, 650-51 (6th Cir. 1993); *American Can Co. v. Mansukhani*, 742 F.2d 314, 322-23 (7th Cir. 1984); *Whitman v. Hawaiian Tug & Barge Corp.*, 27 F. Supp. 2d 1225, 1228 (D. Hawaii 1998). When opposing parties have notice and the opportunity to be heard, as in this case, courts deciding motions for temporary restraining orders typically apply the standards applicable to a preliminary injunction. *E.g.*, *Budget Rent A Car Corp. v. Harvey Kidd Automotive*, 249 F. Supp. 2d 1048, 1049 (N.D. Ill. 2003); *Whitman*, 27 F. Supp. 2d at 1228; *Coca-Cola Co. v. Alma-Leo U.S.A., Inc.*, 719 F. Supp. 725, 726-27 (N.D. Ill. 1989). Even where notice and opportunity have been provided, the court must apply the standard with an eye on the practical realities of giving the affected parties a fair opportunity to prepare so that an opportunity to be heard will be truly meaningful. See *Coca-Cola*, 719 F. Supp. at 726-27 (applying preliminary injunction standard to grant injunction after an adversarial hearing but limiting duration of order to 20 days).

The status quo ante between the parties is "the last peaceable uncontested status that existed before the dispute arose." *Kimbley v. Lawrence County*, 119 F. Supp. 2d 856, 874 (S.D. Ind. 2000), quoting *Massachusetts Mutual Life Ins. Co. v. Associated Dry Goods Corp.*, 786 F.Supp. 1403, 1427 (N.D. Ind. 1992).  Because it appears that plaintiff has operated its business in essentially the same way for several years at its current location without disturbance from the state, the "last peaceable uncontested status" between the parties was the period before the defendant issued the warning letter to the plaintiff.  A temporary restraining order barring enforcement will therefore preserve the status quo ante in this case.

III.   *Likelihood of Success on the Merits*

The court turns to the plaintiff's likelihood of success on the merits of its First Amendment challenge.  Indiana Code § 35-49-3-3(a)(3) codifies statutory language first adopted in 1977.  It provides that one who "knowingly or intentionally . . . sells or displays for sale to any person matter that is harmful to minors within five hundred (500) feet of the nearest property line of a school or church . . . commits a Class D felony."  Other subsections in Section 3(a) prohibit sales of material "harmful to minors" directly to minors and other forms of direct exposure of minors to such materials.  Material is "harmful to minors" under the Indiana law if:

> (1)   it describes or represents, in any form, nudity, sexual conduct, sexual excitement, or sado-masochistic abuse;

(2)     considered as a whole, it appeals to the prurient interest in sex of minors;

(3)     it is patently offensive to the prevailing standards in the adult community as a whole with respect to what is suitable matter for or performance before minors; and

(4)     considered as a whole, it lacks serious literary, artistic, political, or scientific value for minors.

Ind. Code § 35-49-2-2.  Plaintiffs are unlikely to succeed on the theory that Section 3(a)(3) is a content-based burden on speech, but they appear to be likely to succeed on the theory that Section 3(a)(3) is a time, place, and manner restriction on protected speech that is not justified by concern about secondary effects of plaintiff's business on the surrounding neighborhood.

A.     *Content-Based Legislation*

Plaintiff argues that the provisions of Section 3(a) are intended to shield children from exposure to adult materials, and that the "fit" between that purpose and the 500-foot restriction is too tenuous to survive the strict scrutiny applied to content-based burdens or prohibitions on speech.  See *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803 (2000); *Reno v. American Civil Liberties Union*, 521 U.S. 844 (1997).  This argument sets up a straw man and then easily knocks it down.  Plaintiff has accurately described the principal purpose of the other subsections of Section 3(a), but plaintiff's attempt to portray the 500-foot restriction in the same way is not persuasive.

-6-

The 500-foot restriction was not accompanied by legislative findings or legislative history that would help the court discern its purpose. Cf. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48-52 (1986) (reviewing history of ordinance restricting locations of adult businesses). The court must therefore use other information to evaluate the purpose of the statute, including the circumstances of its enactment and, most important, the probable effects of the statute.

The 500-foot restriction is distinct from the other provisions in the same statute. The 500-foot restriction was added to the other provisions only months after the Supreme Court upheld location-based restrictions on adult businesses in *Young v. American Mini Theaters, Inc.*, 427 U.S. 50 (1976), which recognized a city's interest in limiting the secondary effects such businesses have on surrounding neighborhoods. The Indiana restriction on the sale of sexually explicit materials near schools or churches is best understood as an attempt to legislate within the principles articulated in *American Mini Theaters*, imposing restrictions based on the secondary effects of adult businesses. Plaintiff has correctly pointed out that the 500-foot restriction will do little or nothing to protect children from direct contact with such materials. That fact suggests, however, not that the restriction was an absurdly ineffective and overly broad measure to accomplish that purpose, but that its purpose was closer to its likely effects: placing restrictions on adult businesses to protect nearby neighborhoods, schools, and churches from the secondary effects of those businesses. Accordingly,

plaintiff's challenge to the 500-foot restriction is governed by the line of cases following *American Mini Theaters* and not by the cases addressing content-based restrictions on speech, such as *Playboy Entertainment* and *Reno v. ACLU*.

B.    *Secondary Effects Analysis*

Time, place, and manner restrictions designed to combat the secondary effects of businesses dealing in adult entertainment survive First Amendment scrutiny where they serve a substantial government interest and are narrowly tailored to allow reasonable alternative channels for such communication. *City of Renton*, 475 U.S. 41 (upholding ordinance prohibiting adult theater from locating within 1000 feet of a residential zone, family dwelling, school or church); *Alameda Books, Inc.*, 535 U.S. 425 (reversing summary judgment striking down ordinance prohibiting location of multiple adult entertainment businesses in a structure).

Where a law seeks to limit the secondary effects of constitutionally protected speech, the court must determine whether the state can demonstrate a sufficient connection between the speech regulated by the law and the secondary effects the law was aimed to address. *R.V.S., L.L.C. v. City of Rockford*, 361 F.3d 402, 407-08 (7th Cir. 2004) (reversing denial of injunctive relief against law regulating location of businesses featuring exotic dancing by clothed dancers). The Supreme Court has described this as a form of "intermediate" scrutiny, as distinct from the strict

scrutiny that applies to content-based regulations of speech.  *Alameda Books*, 535 U.S. at 440 (plurality opinion).[1]  In *R.V.S.*, the Seventh Circuit explained:

> [S]imply stating that an ordinance is designed to combat secondary effects is insufficient to survive intermediate scrutiny.  The governmental interest of regulating secondary effects may only be upheld as substantial if a connection can be made between the negative effects and the regulated speech.  In evaluating the sufficiency of this connection, courts must "examine evidence concerning regulated speech and secondary effects." *Alameda Books*, 535 U.S. at 441 . . . . [T]he evidentiary requirement is met if the evidence upon which the municipality enacted the regulation "is reasonably believed to be relevant for demonstrating a connection between [secondary effects producing] speech and a substantial, independent government interest."

361 F.3d at 408, quoting *Alameda Books*, 535 U.S. at 438.  Though this evidentiary burden is not onerous, it requires the state to advance at least "some basis to show that its regulation has the purpose and effect of suppressing secondary effects . . . ."  361 F.3d at 409.

At this early stage in this lawsuit, the state has not met this evidentiary standard.  Secondary effects that may be addressed by statutes restricting time, place, and manner of sexually explicit expression include neighborhood crime, prostitution, reduced property values, the spread of pornographic litter,

---

[1]In this niche of First Amendment law, courts sometimes distinguish between "content-based" restrictions subject to strict scrutiny and "content neutral" restrictions on time, place, and manner, which are subject to only intermediate scrutiny.  This terminology is unfortunate.  As Justice Kennedy explained in his decisive concurring opinion in *Alameda Books*, the time, place and manner restrictions on sexually explicit speech are not truly "content neutral." 535 U.S. at 448.  It is better to describe such restrictions as time, place, and manner restrictions or as secondary effects restrictions.

harassment of citizens by adult entertainment clientele, and increased incidence of sex offenses.   See *City of Renton*, 475 U.S. at 48; *World Wide Video of Washington, Inc. v. City of Spokane*, 368 F.3d 1186, 1190 n.6 (9th Cir. 2004); *Annex Books, Inc. v. City of Indianapolis*, 333 F. Supp. 2d 773, 786 (S.D. Ind. 2004).   One unusual feature of this "secondary effects" niche of First Amendment law is that the burden is on the state or local government to come forward with evidence showing that its concerns are genuine.   See *DiMa Corp.*, 185 F.3d at 830. As in this case, a plaintiff's motion for a temporary restraining order may provide a government with little time to assemble a record, especially to defend a law written nearly thirty years ago, before most of the secondary effects cases were decided, including those holding that the burden is on the government to justify its restriction.   For this reason, the court would consider evidence showing secondary effects found in other states or cited in case law.   See *City of Renton*, 475 U.S. at 51-52 (city could rely on experience and evidence from other cities to adopt ordinance aimed at secondary effects).

If the state were seeking to enforce Indiana Code § 35-49-3-3(a)(3) against a more typical adult entertainment provider, particularly one with on-site viewing facilities, the issues would be very different.   There is a well-developed body of case law and supporting studies addressing the secondary effects of such businesses.   *City of Renton*, 475 U.S. at 50-52 (discussing findings on the effects of adult theaters on surrounding neighborhoods); *Ben's Bar, Inc. v. Village of Somerset*, 316 F.3d 702, 725-26 (7th Cir. 2003) (affirming grant of summary

judgment in favor of defendant city where it presented evidence that nude dancing establishments were associated with secondary effects); *DiMa Corp. v. Town of Hallie*, 185 F.3d 823, 830-31 (7th Cir. 1999) (upholding town ordinance regulating hours of operation of adult bookstores as applied to adult book and video store with on-site viewing booths).

In this case, however, the state has threatened to apply the statute to a store that has only a small fraction of its business in sexually explicit materials and which has no on-site viewing facilities. The defense has not cited and the court has not found any comparable body of law or evidence finding that such general-audience video stores have significant secondary effects on their neighborhoods if a small portion of their business includes the sale or rental of sexually explicit materials for off-site viewing by adults.[2]

In fact, many courts have held that similar restrictions on time, place, and manner were unconstitutional as applied to similar general-audience businesses

---

[2]The state presented at the hearing the testimony of Pastor Robert McMillen of the church across the street from plaintiff's business. Pastor McMillen's concern about the primary effects of pornography on its audience and their families or partners is understandable and is shared by many people. See generally *American Booksellers Ass'n v. Hudnut*, 771 F.2d 323, 325 (7th Cir. 1985) (affirming injunction against broad ordinance prohibiting sale of non-obscene pornography for adults), *aff'd mem.*, 475 U.S. 1001 (1986). The First Amendment, however, puts such concerns beyond the reach of legal prohibitions or burdens with respect to consenting adults. Pastor McMillen is also understandably concerned about crime, property values, and the quality of life in the area. He has not linked any such negative effects to the fact that a small fraction of plaintiff's stock in trade consists of sexually explicit materials for off-site viewing by adults.

and/or those limited to off-site viewing because state and local governments could not produce evidence that such businesses cause adverse secondary effects. See *Encore Videos, Inc. v. City of San Antonio*, 330 F.3d 288, 294-95 (2003), opinion clarified by 352 F.3d 938 (5th Cir. 2003) (ordinance restricting location of sexually oriented businesses held unconstitutional as applied to business offering no on-site viewing); *Wil-Kar, Inc. v. Village of Germantown*, 153 F. Supp. 2d 982, 993 (E.D. Wis. 2001) (holding unconstitutional an ordinance restricting any store carrying "adult entertainment"); *Wolff v. City of Monticello*, 803 F. Supp. 1568, 1572-73 (D. Minn. 1992) (licensing requirement regulating adult entertainment business held unconstitutional as applied to video rental stores whose adult-only business comprised less than ten percent of floor space); *Faraone v. City of East Providence*, 935 F. Supp. 82, 88-89 (D.R.I. 1996) (restriction on Sunday sales and rentals held unconstitutional); see also *World Wide Video, Inc. v. City of Tukwila*, 816 P.2d 18, 21 (Wash. 1991) (no evidence supported belief that businesses carrying little more than ten percent of their stock in trade in adult items produced adverse secondary effects).

The strongest support for the defendant's position in this case comes from two cases upholding comparable laws, but as applied to establishments that allocated significantly more of their businesses to sexually explicit adult entertainment than does the plaintiff. See *Z.J. Gifts D-2, L.L.C. v. City of Aurora*, 136 F.3d 683, 687 (10th Cir. 1998) (reversing summary judgment striking down ordinance regulating location of sexually-oriented businesses as applied to

predominantly adult business offering off-site viewing); *ILQ Investments, Inc. v. City of Rochester*, 25 F.3d 1413, 1418 (8th Cir. 1994) (reversing grant of preliminary injunction against enforcement of ordinance regulating location of adult bookstores as applied to business that did 50 percent of its total sales in adult items and where city presented some evidence of secondary effects as linked to adult bookstores). These cases do not support a finding of secondary effects for a business like plaintiff's.

Based on the limited information presented at this early stage of the litigation, the court has found that the plaintiff is reasonably likely to succeed on the merits of its claim that Indiana Code § 35-49-3-3(a)(3) may not be constitutionally applied to plaintiff's business. This finding applies only to plaintiff, based on the operation of its business as described above. Different circumstances might warrant a different outcome. Because the court has found likelihood of success under a time, place, and manner analysis, the court does not reach plaintiff's overbreadth and vagueness arguments.

IV.   *Other Factors for Injunctive Relief*

In general, a violation of First Amendment rights for even a short time inflicts irreparable injury for which money damages are an inadequate remedy. *E.g., Joelner v. Village of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004), citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Also, of course, the defendant prosecutor (a state official sued in his official capacity) is immune from any

damage award that might be needed to compensate plaintiff for lost sales resulting from acquiescence to a threat to enforce an unconstitutional law. Additionally, the government experiences no harm when prevented from enforcing an unconstitutional statute; the public interest is best served by preservation of First Amendment liberties. *Joelner*, 378 F.3d at 620.

Accordingly, the court has granted plaintiff's motion for a temporary restraining order and has enjoined enforcement of the 500-foot restriction in Indiana Code § 35-49-3-3(a)(3) as applied to plaintiff's establishment on East 21st Street in Indianapolis.

Date: November 22, 2005

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Hamid R. Kashani
445 North Pennsylvania Street, Suite 600
Indianapolis, Indiana  46204

J. Michael Murray
BERKMAN GORDON MURRAY & DEVAN
jmmurray@bgmdlaw.com

Steven D. Shafron
BERKMAN GORDON MURRAY & DEVAN
sshafron@bgmdlaw.com

Robert Wente
Deputy Attorney General
302 West Washington Street
IGCS – 5th Floor
Indianapolis, Indiana 46204
rwente@atg.state.in.us

Nicholas Anthony Miller
Deputy Attorney General
302 West Washington Street
IGCS – 5th Floor
Indianapolis, Indiana 46204
nmiller@atg.state.in.us